# STATE OF MICHIGAN

# COURT OF APPEALS

LAWRENCE FINGERLE,

        Plaintiff-Appellee,

v

CITY OF ANN ARBOR,

        Defendant-Appellant,

and

AMERICAN FIRE AND CASUALTY COMPANY,

        Defendant.

FOR PUBLICATION
December 2, 2014

No. 310352
Washtenaw Circuit Court
LC No. 11-000228-CZ

Before: BECKERING, P.J., and SAAD and O'CONNELL, JJ.

BECKERING, P.J. (*dissenting*)

With all due respect, I disagree with the analysis of my colleagues. The governmental tort liability act (GTLA), MCL 691.1401 *et seq*., provides a statutory framework that establishes when a governmental agency is liable for defects in its sewage disposal system. According to the express language of the GTLA, a governmental agency that knows, or in the exercise of reasonable diligence should know, about a defect in its sewage disposal system—whether it be a defect in the design or a malfunction—must take reasonable steps in a reasonable amount of time to repair, correct, or remedy the defect. Failure to do so exposes the governmental agency to liability for damages proximately caused by the defect. Here, plaintiff Lawrence Fingerle produced evidence to establish that the relief storm sewer system at issue contained defects in its design and construction, which defendant City of Ann Arbor[1] knew about and had plenty of time to fix, that caused it to back up during a rainstorm and flood his home. I agree with the trial court's finding that genuine issues of material fact exist, entitling plaintiff to a jury trial on the issues of defect and causation. Therefore, I would affirm the trial court's denial of defendant's motion for summary disposition under MCL 2.116(C)(7).

## I. STANDARD OF REVIEW

---

[1] Although there are two defendants, City of Ann Arbor and American Fire and Casualty, the use of the word "defendant" in this opinion refers solely to City of Ann Arbor.

-1-

This Court reviews de novo both the applicability of governmental immunity and a trial court's decision on a motion for summary disposition under MCR 2.116(C)(7). *Roby v Mount Clemens*, 274 Mich App 26, 28; 731 NW2d 494 (2006). "When reviewing a motion under MCR 2.116(C)(7), a reviewing court must consider all affidavits, pleadings, and other documentary evidence submitted by the parties and construe the pleadings and evidence in favor of the nonmoving party." *Anzaldua v Neogen Corp*, 292 Mich App 626, 629; 808 NW2d 804 (2011). See also *Dextrom v Wexford Co*, 287 Mich App 406, 428-429; 789 NW2d 211 (2010). "To overcome a motion brought under MCR 2.116(C)(7), the plaintiff must allege facts warranting the application of an exception to governmental immunity." *Roby*, 274 Mich App at 28-29. "If no facts are in dispute, or if reasonable minds could not differ regarding the legal effect of the facts, the question whether the claim is barred by governmental immunity is an issue of law." *Pierce v City of Lansing*, 265 Mich App 174, 177; 694 NW2d 65 (2005).

## II. ANALYSIS

Defendant argues that it was entitled to summary disposition under MCR 2.116(C)(7) because plaintiff failed to satisfy all of the elements of MCL 691.1416 through MCL 691.1419 in order to establish an exception to governmental immunity and that plaintiff failed to establish that defendant breached a duty under the circumstances presented in this case. I disagree.

### A. APPLICABILITY OF GTLA TO THIS CASE
### AND EXISTENCE OF A STATUTORY DUTY

Absent the applicability of a statutory exception, the GTLA provides a broad grant of immunity from tort liability to government agencies that are engaged in the discharge or exercise of a governmental function. MCL 691.1407(1); *Maskery v Univ of Mich Bd of Regents*, 468 Mich 609, 613; 664 NW2d 165 (2003). "MCL 691.1417(2) provides an exception to governmental immunity for sewage disposal system events . . . ." *Linton v Arenac Co Rd Comm*, 273 Mich App 107, 114; 729 NW2d 883 (2006). The statute provides as follows, in pertinent part:

> A governmental agency is immune from tort liability for the overflow or backup of a sewage disposal system unless the overflow or backup is a sewage disposal system event and the governmental agency is an appropriate governmental agency. Sections 16 to 19 abrogate common law exceptions, if any, to immunity for the overflow or backup of a sewage disposal system and provide the sole remedy for obtaining any form of relief for damages or physical injuries caused by a sewage disposal system event regardless of the legal theory. [MCL 691.1417(2).]

Moreover, MCL 691.1417(3) states the following:

> If a claimant, including a claimant seeking noneconomic damages, believes that an event caused property damage or physical injury, the claimant may seek compensation for the property damage or physical injury from a governmental agency if the claimant shows that all of the following existed at the time of the event:

(a) The governmental agency was an appropriate governmental agency.

(b) The sewage disposal system had a defect.

(c) The governmental agency knew, or in the exercise of reasonable diligence should have known, about the defect.

(d) The governmental agency, having the legal authority to do so, failed to take reasonable steps in a reasonable amount of time to repair, correct, or remedy the defect.

(e) The defect was a substantial proximate cause of the event and the property damage or physical injury.

"To successfully bring an action, a plaintiff cannot merely satisfy subsection 2 but must, instead, establish all the requirements of subsection 3." *Bosanic v Motz Dev, Inc*, 277 Mich App 277, 282; 745 NW2d 513 (2007), citing *Willett v Waterford Charter Twp*, 271 Mich App 38, 49-50; 718 NW2d 386 (2006). Moreover, the statute provides not only an exception to immunity if its requirements are satisfied, but also a cause of action. *Id.* at 282-284. *Bosanic* rejects the idea that the statute itself does not provide a cause of action:

> The drain commissioner relies on an extremely strained reading of MCL 691.1417 to contend that the statute does not itself provide plaintiffs any cause of action, but instead, some independent cause of action must be pleaded . . . . While the argument is difficult to comprehend or summarize, the contention is that the statute provides an exception to immunity if its requirements are satisfied, but only if there is some legal theory upon which a claim for damages is based. In other words, defendant argues that the statute does not itself provide a cause of action.
>
> A plain reading of subsection 2 itself does not support that conclusion and, when subsection 3 is also considered, that conclusion becomes even less tenable. [*Id*. at 282-283.]

Thus, if plaintiff can establish the elements set forth in MCL 691.1417, he can recover for his losses.

The majority views plaintiff's action as being predicated on the idea that defendant did not build a storm water drainage system that would divert as much water as defendant said it would, amounting to an alleged breach of promise; thus, the majority concludes that plaintiff's claim sounds in contract law, not tort law. As such, the majority concludes that the GTLA is completely inapplicable under the circumstances. I do not agree with this characterization of plaintiff's case. Plaintiff has alleged, consistent with the plain language of the GTLA, defects in defendant's storm sewer system of which defendant was aware or should have been aware, and which, according to plaintiff, proximately caused damage to his home. For instance, plaintiff alleged that the storm sewer at issue suffered from a host of defects, including: 1) inadequate design capacity for regularly recurring peak flows leading to recurring collection of storm water outside the detention easement; 2) inadequate inlet capacity resulting in storm water backup and

surface pooling; 3) drainage into the storm sewer from areas outside of the planned drainage area (including runoff from upstream development); 4) failure to increase capacity in response to increased load from upstream development; 5) inadequate or defective upstream detention; 6) misalignment in pipes and inlets; 7) inadequate capacity at downstream restrictions resulting in backup into the detention easement; and 8) failure to provide an adequate emergency storm water overflow route. These defects, according to plaintiff, proximately caused his damages. When examining plaintiff's complaint, it is evident that the nature of the liability sought to be imposed is tort liability grounded in MCL 691.1417, not contract liability. See *In re Bradley Estate*, 494 Mich 367, 383-385; 835 NW2d 545 (2013) (explaining that the GTLA requires courts to look past the label of a claim to the nature of the liability sought to be imposed).

Defendant does not claim that plaintiff's case sounds in contract. Instead, defendant essentially argues that because it owed no duty to build a storm sewer system in the first place, once it undertakes to build one it cannot be held to owe a duty to design and build an adequate one. But the plain language of the GTLA expressly requires a governmental agency to repair any defects—including defects in the *design* of the system. In direct contrast to the limitations on liability set forth in the GTLA's public buildings exception, MCL 691.1406[2], and the public highway exception, MCL 691.1402(1)[3], wherein the Legislature did not include design defects among the exceptions for which a governmental agency may be held liable, the GTLA *expressly* holds governmental agencies accountable for design defects. MCL 691.1416(e), which defines the language used in 691.1417 to MCL 691.1419, defines the word "defect" to mean "a construction, *design*, maintenance, operation, or repair defect."[4] For purposes of MCL

---

[2] In *Renny v Dept of Transp*, 478 Mich 490, 500; 734 NW2d 518 (2007), our Supreme Court noted that "[t]he statutory language refers only to the governmental agency's duty to 'repair and maintain public buildings,' and does not refer to any duty to design a public building. Therefore, to hold that the language of the statute includes a design defect claim is inconsistent with its plain language." The Court further elaborated that

> "Design" is defined as "to conceive; invent; contrive." By contrast, "repair" means "to restore to sound condition after damage or injury." Similarly, "maintain" means "to keep up" or "to preserve." Central to the definitions of 'repair' and 'maintain' is the notion of restoring or returning something, in this case a public building, to a prior state or condition. *"Design" refers to the initial conception of the building, rather than its restoration. "Design" and "repair and maintain," then, are unmistakably disparate concepts*, and the Legislature's sole use of "repair and maintain" unambiguously indicates that it did not intend to include design defect claims within the scope of the public building exception. [*Id*. at 500-501 (emphasis added, footnotes omitted).]

[3] In *Hanson v Board of County Road Com'rs of County of Mecosta*, 465 Mich 492, 501-502; 638 NW2d 396 (2002), the Supreme Court noted that "[n]owhere in the statutory language is there a duty to *install,* to *construct* or to correct what may be perceived as a dangerous or defective *'design.'* " Moreover, it is not the province of this Court to make policy judgments or to protect against anomalous results."

[4] The Legislature's decision to include design defects among those that a governmental agency must timely remedy or repair may be due to the fact that a defect in a sewage disposal system

691.1416(e), this Court has determined that a "defect" means " 'a fault or shortcoming; imperfection.' " *Willett*, 271 Mich App at 51, quoting *Random House Webster's College Dictionary* (1997).

Here, plaintiff alleges shortcomings in the storm sewer's design and construction, and the GTLA expressly provides a cause of action for such claims. MCL 691.1417. See also *Bosanic*, 277 Mich App at 283 ("[MCL 691.1417(3)] clearly provides that a 'claimant may seek compensation' if the listed requirements are satisfied. In sum, while some semantic challenges may exist, it is difficult to imagine a statutory scheme that more clearly provides a potential cause of action."). Where the Legislature has made the policy choice to provide a theory of recovery in cases involving design defects in sewage disposal systems, this Court should not second-guess that decision. *Wells Fargo Bank, NA v Cherryland Mall Ltd Partnership (On Remand)*, 300 Mich App 361, 376; 835 NW2d 593 (2013) (quotation omitted) ("the Legislature possesses superior tools and means for gathering facts, data, and opinion and assessing the will of the public."). Put simply, defendant's argument that it owed no duty to build a storm sewer system in the first place, and thus, it should not owe any duty to repair design defects in the system it builds, flies in the face of the plain language of the GTLA.

Defendant also argues that it does not owe plaintiff a duty under the GTLA because the GTLA does not impose a duty on defendant to remove all naturally collecting surface water and rainwater from private property. I agree that the GTLA does not impose such a duty on defendant. And so does plaintiff, as this is not the duty that plaintiff is alleging, expressly or implicitly. Indeed, plaintiff expressly states the following in his brief on appeal:

> There is no general duty "to capture all storm water run-off from private property" and Plaintiff has not alleged one. Liability arises when a public storm sewer has a defect, the City has notice of the defect, the City fails to take reasonable steps to correct the defect, and the defect causes the plaintiff's damages. MCL 691.1417(3). . . . [T]here is no need to consider abstract notions of "duty" that have not been alleged.

Although defendant does not have a general duty to remove naturally collecting surface water and rainwater from private property, it is well established that a duty may be imposed on a defendant that "voluntarily assumed a function that it was under no legal obligation to assume." *Baker v Arbor Drugs, Inc*, 215 Mich App 198, 205; 544 NW2d 727 (1996). In this case, defendant voluntarily undertook to construct, assess the residents for, become the operator of, and exert jurisdiction and control over the relief storm sewer system, which is a sewage disposal system under the GTLA. The documentary evidence submitted to the trial court illustrates that defendant implemented the relief storm sewer system to alleviate significant flooding, including basement flooding, by being able to accommodate a 24-hour 10-year storm event. Because defendant voluntarily assumed this function, it had a duty under the GTLA to take reasonable steps in a reasonable amount of time to repair, correct, or remedy a known defect in the system or a defect in the system that it should have known of through the exercise of reasonable diligence. See MCL 691.1417(3). Defendant's failure to timely correct any known design or

that is bad enough to cause damage to people or property, aside from being disgusting, can have serious health consequences to a significant number of people.

construction defects in the system exposed it to liability according to the plain language of the GLTA.

To the extent the majority questions the applicability of the GTLA to sewage disposal events involving rainwater, I respectfully disagree. The majority suggests that defendant's storm sewer is not a sewage disposal system under the plain language of MCL 691.1416(j), which provides as follows:

> "Sewage disposal system" means all interceptor sewers, *storm sewers*, sanitary sewers, combined sanitary and storm sewers, sewage treatment plants, and all other plants, works, instrumentalities, and properties used or useful in connection with the collection, treatment, and disposal of sewage and industrial wastes, *and includes a storm water drain system under the jurisdiction and control of a governmental agency*. [Emphasis added.]

The majority construes the phrase "used or useful in connection with the collection, treatment, and disposal of sewage and industrial wastes" as modifying all types of sewers and systems listed in MCL 691.1416(j). Thus, the majority opines that an appropriate government agency only has a duty to repair, correct, or remedy defects in disposal systems that handle the collection, treatment, and disposal of sewage and industrial wastes. However, this Court has previously held, in a case involving flooding after heavy rainfall, that a "sewage disposal system" under the GTLA is not limited to instrumentalities dealing with sewage or waste matter. *Linton*, 273 Mich App at 121. Even if the majority were correct in construing the phrase "used or useful in connection with the collection, treatment, and disposal of sewage and industrial wastes" as modifying all types of sewers listed before it, it fails to account for critical language in the remainder of the statute; MCL 691.1416(j) specifically includes "a storm water drain system under the jurisdiction and control of a governmental agency" within the meaning of a sewage disposal system. The phrase "used or useful in connection with the collection, treatment, and disposal of sewage and industrial wastes" does not modify this later inclusion of a storm water drain system. A storm water drain system undoubtedly serves events involving rainwater; after all, storm water is rainwater; and, thus, the GTLA applies to events involving rainwater. Had the Legislature not wanted the GTLA exception to apply to rainwater, it would not have included the words "storm water" in the statute. As this Court explained in *Linton*, "if the Legislature had intended that the exception only apply to sewage, then it would [ ] not have made a point of specifically clarifying that the exception applies to 'a *storm water* drain system.' " *Id.* at 117. To interpret the statute otherwise would render nugatory the phrase "*and includes a storm water drain system.*" Defendant's relief storm sewer system is "a storm water drain system under the jurisdiction and control of a governmental agency" and, thus, it is a sewage disposal system. MCL 691.1416(j).

### B. PLAINTIFF HAS PRESENTED EVIDENCE TO EITHER ESTABLISH OR CREATE GENUINE ISSUES OF MATERIAL FACT CONCERNING THE ELEMENTS SET FORTH IN MCL 691.1417(3)(a) THROUGH (e)

Upon review of the evidence presented in this case, I would find that plaintiff has produced sufficient evidence to either establish or create genuine issues of material fact with

regard to the elements set forth in MCL 691.1417(a) through (e), which if met, would entitle plaintiff to recovery.

### 1. MCL 691.1417(3)(a), APPROPRIATE GOVERNMENTAL AGENCY

As noted above, MCL 691.1417(3)(a) requires plaintiff to establish that defendant was "an appropriate governmental agency." Defendant argues that it is not "an appropriate governmental agency" for purposes of MCL 691.1417. I disagree.

The Legislature defined the phrase, "appropriate governmental agency" to mean "a governmental agency that, at the time of a sewage disposal system event, owned or operated . . . the portion of the sewage disposal system that allegedly caused damage or physical injury." MCL 691.1416(b). MCL 691.1416(j) defines a "sewage disposal system" to include "storm sewers" and "a storm water drain system under the jurisdiction and control of a governmental agency."

In this case, plaintiff alleges that the relief storm sewer system caused damage to his home during the June 2010 storm because the system was defective. The relief storm sewer system is a storm water drain system. See MCL 691.1416(j). There is evidence demonstrating that the relief storm sewer system is owned or operated by and under the jurisdiction and control of defendant. MCL 691.1416(b); MCL 691.1416(j). Specifically, the pleadings and documentary evidence demonstrate that defendant commissioned the relief storm sewer study in 1989, constructed it in approximately 1991, and funded the construction through special assessments and improvement charges upon its residents. A map submitted to the trial court by defendant indicates that the relief storm sewer system is a public storm main. Defendant admitted in interrogatories that it maintains, repairs, and cleans the system, and there was evidence identifying the system as being under defendant's jurisdiction and control.

Defendant contends that it is not an "appropriate governmental agency" because there is no record evidence that the flooding of plaintiff's basement was caused by an overflow of the relief storm sewer. This contention lacks merit. MCL 691.1416(b) includes as an appropriate governmental agency one that owned or operated a sewage disposal system that "allegedly" caused damage. Plaintiff's complaint alleges that the relief storm sewer system caused damage to his home during the June 2010 storm; thus, defendant is an "appropriate government agency" under the facts of this case.[5]

### 2. MCL 691.1417(3)(b), (c) & (d), DEFECT IN SEWAGE DISPOSAL SYSTEM ABOUT WHICH DEFENDANT EITHER KNEW OR SHOULD HAVE KNOWN AND WHICH DEFENDANT FAILED TO TAKE REASONABLE STEPS IN A REASONABLE AMOUNT OF TIME TO REPAIR, CORRECT, OR REMEDY

---

[5] To the extent defendant's argument challenges causation, such argument is relevant to MCL 691.1417(3)(e), discussed *infra*.

Subsections (b) through (d) of MCL 691.1417(3) collectively prescribe the duty imposed on governmental agencies when a defect exists in one of their sewage disposal systems. Specifically, a government agency that owns or operates a sewage disposal system must take reasonable steps in a reasonable amount of time to repair, correct, or remedy a defect in the system that the agency either knew about or should have known about through the exercise of reasonable diligence.

Here, as noted above, plaintiff identified a host of defects in defendant's storm sewer, including: 1) inadequate design capacity for regularly recurring peak flows leading to recurring collection of storm water outside the detention easement; 2) inadequate inlet capacity resulting in storm water backup and surface pooling; 3) drainage into the storm sewer from areas outside of the planned drainage area (including runoff from upstream development); 4) failure to increase capacity in response to increased load from upstream development; 5) inadequate or defective upstream detention; 6) misalignment in pipes and inlets; 7) inadequate capacity at downstream restrictions resulting in backup into the detention easement; and 8) failure to provide an adequate emergency storm water overflow route. In support of his defect claims, plaintiff submitted evidence from Clif Seiber and Mark Pribak, civil engineers, and John and Nancy Yalonen, plaintiff's neighbors.

Seiber testified that the relief system was designed to accommodate a 24-hour 10-year storm event, but that the system failed to do so during the June 2010 storm. He opined that unless something was wrong with the system's design, the amount of rainfall should not have caused flooding. Seiber identified several specific defects in the relief storm sewer system, including under-capacity catch basin covers and undersized piping. He explained that upstream water could not enter the relief storm sewer in sufficient rate flows. There was not capacity for 23 acres of runoff. He opined that the catch basin covers restricted inlet capacity. And he explained that the design for the relief system included errors in the calculation of upstream runoff. Pribak testified specifically that the design of the relief sewer erroneously assumed a 4.4 cubic feet per second (cfs) peak flow for a 10-year 24-hour storm, but that the actual expected peak rate of upstream flow is 35.7 cfs. Nancy Yalonen testified that defendant told her that the installation of the relief storm sewer system would "take care of your issue," i.e., take care of the flooding problem.[6] Yet, the Yalonens testified that they received no benefit from the relief system that they paid for through a special assessment—according to Nancy, "it never made things better."

In addition, plaintiff presented evidence that defendant knew or should have known about the defect in the relief storm sewer system. See MCL 691.1417(3)(c) (requiring the plaintiff to prove that the governmental agency "knew, or in the exercise of reasonable diligence should have known, about the defect."). Notably, plaintiff's neighbors testified that they repeatedly notified defendant, over an eight-year period, of severe flooding in the area. In addition, Seiber opined that, based on the persistent flooding, defendant should have known about serious design defects. Pribak, who was defendant's expert witness, agreed that the repeated flooding "raises

_____

[6] Additionally, Cresson Slotten, the manager of defendant's systems planning unit, testified that the relief storm sewer system was implemented in response to basement flooding and that the system was intended to alleviate flooding.

some indication that there's something different going on with the system," and that it was fair to say that the repeated flooding indicated a problem.

Supporting defendant's position that the relief storm sewer system did not contain a defect, Cresson Slotten, the manager of defendant's systems planning unit, testified that he was involved in the construction of the relief system and that he was not aware that it had any problems or that it was not operating as designed. Similarly, Gerald Hancock, defendant's storm water and floodplain programs coordinator, testified that he was not aware of any defects in the relief system. He also was not aware that the system could not handle the flow of northerly water from upstream. Hancock explained that the relief system was designed to handle a 10-year 24-hour storm event. He testified that the June 2010 storm leading to the damage of plaintiff's home was less than a 10-year storm event over the course of 24 hours. Suggesting an explanation for why the relief system did not accommodate the June 2010 storm despite being designed to handle a 10-year 24-hour storm event, Hancock explained that there were peaks during the storm that exceeded a 10-year storm event.

In light of this documentary evidence, I would find that reasonable minds could differ regarding whether the relief storm sewer system contained a fault, shortcoming, or imperfection, i.e., a defect, in design, particularly inadequate piping and inlet capacity, and whether defendant knew or should have known about such a defect. See MCL 691.1417(3); MCL 691.1416(e); *Willett*, 271 Mich App at 51. It is undisputed that nothing was done to repair the system or remedy the problem before plaintiff's flooding incident. Therefore, I would conclude that the trial court properly denied defendant's motion for summary disposition with regard to whether plaintiff submitted enough evidence to satisfy the elements set forth in MCL 691.1417(3)(b) though (d). See *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003).

### 3. MCL 691.1417(e), DEFECT AS A SUBSTANTIAL PROXIMATE CAUSE OF THE EVENT & PROPERTY DAMAGE

Although the trial court determined causation to be a genuine issue of material fact and defendant does not raise this issue on appeal, the majority concludes that there is no causation. The GTLA requires that the defect in the sewage disposal system be "a substantial proximate cause of the event and the property damage or physical injury." MCL 691.1417(3)(e). The GTLA defines a "substantial proximate cause" as "a proximate cause that was 50% or more of the cause of the event and the property damage or physical injury."[7] MCL 691.1416(l). Causation is generally a question for the trier of fact. *Holton v A+ Ins Assoc, Inc*, 255 Mich App 318, 326; 661 NW2d 248 (2003).

Here, plaintiff produced documentary evidence of an accumulation of storm water onto his property that was caused by inadequate piping and inlet capacity, i.e., defects in the storm sewer. Seiber opined that had the defects in the relief system not been present, the relief system would have adequately accommodated the storm event that caused plaintiff's flooding. Seiber opined that the predominate cause of plaintiff's flooding was the inadequate design of the relief storm sewer system. And he concluded to a reasonable degree of professional certainty that the

---

[7] Generally, proof of causation requires both cause in fact and proximate cause. *Haliw v Sterling Hts*, 464 Mich 297, 310; 627 NW2d 581 (2001).

defects in the system were 50% or more of the cause of the flooding and damage. Defendant built the relief storm sewer system in response to flooding at Chaucer Court. And the documentary evidence illustrates that the system was intended to accommodate a 10-year 24-hour storm event. It is undisputed that the June 2010 storm was less than a 10-year 24-hour storm event. Thus, the evidence supports the conclusion that the June 2010 storm was reasonably foreseeable. An intervening cause is not a superseding cause if it was reasonably foreseeable. *McMillan v Vliet*, 422 Mich 570, 576; 374 NW2d 679 (1985). Given the evidence in this case, I would conclude that whether the defect in the relief storm sewer system was a proximate cause that was 50% or more of the cause of the sewage disposal system event and plaintiff's basement flooding, see MCL 691.1416(*l*), is a question for a jury to consider along with the fact that plaintiff built the basement window in an area with both a storm water detention basin and a history of flooding. Accordingly, I would conclude that the trial court properly denied defendant's motion for summary disposition on the basis that causation was a genuine issue of material fact.

### C.  MCL 691.1417(2), SEWAGE DISPOSAL SYSTEM EVENT

Finally, although not addressed by the majority, I note that defendant raises the additional, unpreserved argument that plaintiff's flooding was not the result of a "sewage disposal system event" under MCL 691.1417. See, generally, *In re Smith Trust*, 274 Mich App 283, 285; 731 NW2d 810 (2007) ("Because this argument was not raised in the trial court, it is not preserved."). As this issue is unpreserved, I would decline to address it. See, generally, *Wiggins v City of Burton*, 291 Mich App 532, 574; 805 NW2d 517 (2011) ("We decline to address this issue for the first time on appeal."); *Bombalski v Auto Club Ins Ass'n*, 247 Mich App 536, 546; 637 NW2d 251 (2001) ("We decline to address this unpreserved issue, which the trial court did not expressly consider."). However, in the event this Court were to exercise its discretion to overlook the preservation requirements and review this issue, see generally *Smith v Foerster-Bolser Constr, Inc*, 269 Mich App 424, 427; 711 NW2d 421 (2006), I would conclude that defendant's argument lacks merit.

A "sewage disposal system event," or simply an "event" as referred to in MCL 691.1417, "means the overflow or backup of a sewage disposal system onto real property." MCL 691.1416(k). The statute does not define the terms "overflow" or "backup." Therefore, this Court may reference a dictionary to ascertain their plain meaning. See *Willett*, 271 Mich App at 51. See also *Coventry Parkhomes Condo Ass'n v Fed Nat'l Mtg Ass'n*, 298 Mich App 252, 259; 827 NW2d 379 (2012). "Overflow" is defined as "to flow or run over, as rivers or water," "to have the contents flowing over or spilling," "flood; inundate," "to flow over the edge or brim of," "something that flows or runs over," and "a portion crowded out of an overfilled place." *Random House Webster's College Dictionary* (2005). "Backup" means "an accumulation due to stoppage." *Id.*

In this case, Seiber concluded that upstream water could not enter the relief storm sewer system in sufficient rate flows because of inadequate design capacity of inlets and piping. Seiber noted that there were errors in the calculation of upstream runoff during the system's design. During his deposition, Arthur Herold, another one of plaintiff's neighbors, described the flow of upstream water to the two relief storm sewer drains (beehives) on his property:

*Q.* Now based on what you are saying, fair to say that when [the upstream water] hits your property it doesn't all go into that intake drain?

*A.* My experience is that very little of it goes into the intake drain.

\* \* \*

*A.* [A]nd so what happens is that the water hits the [first] drain, then as it can't go down in and more and more water collects it starts going on either side of the drain and over the drain until finally it's several feet on either side of the drain and the drain itself is buried under rushing water by several feet and then there is usually a huge vortex going on.

\* \* \*

*A.* [B]y the time the water hits that second beehive very, very little of it, in fact, there is never a vortex there. Very, very little of it actually goes into that system because the system is maxed out at that point. In other words, it has taken all the water it can get. There is no reserve left over once the water that starts at the beginning of it enters into that pipe at the first beehive. So by the time that water rushed down and around the property and gets to the second beehive there is very little capacity for that system . . . . And so that beehive never really exhibits that real profound entry sucking, vortex kind of thing happening in the first one.

*Q.* And you are referring to the second?

*A.* The second beehive.

*Q.* The one that's basically downstream of the water flow.

*A.* Yeah, the pipe is filled is how it has been described.

*Q.* How is it filled at that point if the water wasn't getting in at the first beehive?

*A.* Maybe I said this clumsily. Water enters into the beginning beehive, whatever water and it's continually entering in, that's the vortex.

*Q.* Yes.

*A.* Whatever water cannot enter in through that action goes over the beehive and then starts the aboveground process.

\* \* \*

*A.* So it's sort of like it's a pipe that comes around which is already filled by this first action. By the time it gets here the second beehive there is not like

not [sic] much capacity to drop more water into that system since the piping is already filled.

This documentary evidence illustrates that there was a "backup" of the relief storm sewer system, i.e., an accumulation of water onto real property due to stoppage of the system, and, thus, a "sewage disposal system event" for purposes of MCL 691.1417. See MCL 691.1416(k). Specifically, there was a stoppage of storm-water intake into the relief storm sewer system due to the system's inadequate capacity of inlets and piping, and the stoppage caused an accumulation of storm water. Therefore, defendant's unpreserved argument that plaintiff's flooding was not the result of a "sewage disposal system event" lacks merit.

For the reasons provided in this dissenting opinion, I would affirm the trial court's order denying defendant's motion for summary disposition under MCR 2.116(C)(7).


/s/ Jane M. Beckering