BOSANIC v MOTZ DEVELOPMENT, INC

Docket No. 271765. Submitted November 14, 2007, at Lansing. Decided
December 4, 2007, at 9:00 a.m.

Peter S. Bosanic, Jr., and others brought an action in the Clinton
Circuit Court against Motz Development, Inc., and others, includ-
ing the Clinton County drain commissioner and the Prairie
Creek-Gunderman Lake Drain drainage district, seeking damages
for flooding in their homes in May 2004. All the allegations of
liability were based on the commissioner's alleged failure to
appropriately review the plans and design of the drainage system
servicing the plaintiffs' subdivision. The drain commissioner and
the drainage district moved for summary disposition, contending
that the statute providing an exception to governmental immunity
with regard to certain sewage-disposal-system events, MCL
691.1417, did not provide the plaintiffs a cause of action and, if it
did, the plaintiffs failed to state a valid claim under the statute.
The court, Randy L. Tahvonen, J., denied the motion and stayed
the action pending an appeal. The drain commissioner and the
district appealed.

The Court of Appeals *held*:

1. The statute providing an exception to governmental immu-
nity with regard to certain sewage-disposal-system events, MCL
691.1417, provides a potential cause of action to the plaintiffs. The
statute constitutes the only exception to governmental immunity
legally recognized in Michigan, and provides the sole remedy for
obtaining any form of relief, for damage or physical injury caused
by a sewage-disposal-system event.

2. The facts alleged by the plaintiffs do not establish that
before the May 2004 flooding the drain commissioner had the legal
authority to take any action to address the design defect that the
plaintiffs allege exists in the drain. The plaintiffs, therefore, failed
to prove that all the requirements for bringing an action stated in
MCL 691.1417(3) were met.

Reversed and remanded for entry of summary disposition for
the drain commissioner and the district.

GOVERNMENTAL IMMUNITY — SEWAGE-DISPOSAL SYSTEMS — ACTIONS.

> The statute providing an exception to governmental immunity with regard to certain sewage-disposal-system events provides a potential cause of action to a claimant seeking compensation for damage or physical injury caused by a sewage-disposal-system event (MCL 691.1417).

*Plunkett & Cooney, P.C.* (by *David K. Otis* and *Peter D. Cronk*) (*Bendure & Thomas* by *Mark R. Bendure*, of counsel), for the plaintiffs.

*Cardelli, Lanfear & Buikema, P.C.* (by *Anthony F. Caffrey III*), for Motz Development, Inc.

*Hubbard, Fox, Thomas, White & Bengtson, P.C.* (by *Michael G. Woodworth, Stacy L. Hissong*, and *Mark T. Koerner*), for the Clinton County Drain Commissioner and the Prairie Creek-Gunderman Lake Drain Drainage District.

Before: OWENS, P.J., and BANDSTRA and DAVIS, JJ.

BANDSTRA, J. Plaintiffs seek compensation from defendant Clinton County drain commissioner[1] because of flooding that damaged their homes following an extraordinarily severe rainfall in May 2004. They primarily claim that the drain system in their subdivision was seriously undersized and that this resulted chiefly from a failure, during the design process in the late 1990s, to appropriately measure the acreage near the subdivision from which water would flow into the system (the "tributary offsite acreage" [TOA]). The other defendants are the developer and its engineers who assisted in designing and installing the drain system. The drain

---

[1] The drainage district at issue here is also named as a defendant. However, because all the allegations of liability are based on the commissioner's performance of his duties, "defendant" herein refers to the commissioner.

commissioner had the statutory authority under the Drain Code, MCL 280.1 *et seq.*, to review the plans and design of the drain system and allegedly failed to do so appropriately, resulting in the defective design. At issue on appeal is the motion for summary disposition by the drain commissioner and the drainage district, which was denied by the trial court.

Defendant contends that summary disposition was warranted because the statute providing an exception to governmental immunity, MCL 691.1417, does not itself provide a cause of action, and plaintiffs have not alleged any separate cause of action. Alternatively, defendant argues that plaintiffs have failed to state a valid claim regarding the elements required under the statute (if it provides a cause of action). We conclude that defendant is wrong on the first issue (the statute providing an exception to immunity does provide a potential cause of action) but that defendant is correct with respect to the second issue (the statute's requirements are not satisfied under the facts alleged by plaintiffs). Thus, we reverse the order denying summary disposition in favor of the drain commissioner and the drainage district and remand for the entry of an order of summary disposition in their favor.

### BASIC FACTS

The basic facts alleged by plaintiffs[2] can be summarized as follows:

---

[2] Defendant's motion for summary disposition was based, in part, on MCR 2.116(C)(8) ("The opposing party has failed to state a claim on which relief can be granted.") For purposes of that argument, we accept plaintiffs' allegations as if they are true. *Adair v Michigan*, 470 Mich 105, 119; 680 NW2d 386 (2004); *Alan Custom Homes, Inc v Krol*, 256 Mich App 505, 508; 667 NW2d 379 (2003). Defendant further based his motion for summary disposition on MCR 2.116(C)(7) ("The claim is barred

- The drain system in the Creekside subdivision where they live is seriously undersized.

- One of the reasons for that defect was the failure of the developer to appropriately consider the size and impact of the TOA on that system when the system was designed and installed in the late 1990s.

- The drain commissioner had an obligation to review the various plans pursuant to which the drain system was designed and installed.

- The drain commissioner, while recognizing that the lack of appropriate measurement was a problem in the design process, failed to require the developer to properly measure the TOA and its impact but instead advised the developer to use an estimation approach that was improper.[3]

- The resulting undersized drain system was a significant-enough cause of the May 2004 flooding to allow plaintiffs to recover property-loss damages from the drain commissioner.

---

because of . . . immunity granted by law . . . ."), claiming governmental immunity. The arguments with respect to MCR 2.116(C)(7) and (8) somewhat conflate. Defendant's contention is really that plaintiffs have failed to state a claim on which relief can be granted (MCR 2.116[C][8]) because, under the facts alleged, their claim is barred because of governmental immunity (MCR 2.116[C][7]), since the exception provision of MCL 691.1417 is not satisfied. Defendant further claimed that summary disposition was appropriate under MCR 2.116(C)(10), arguing that plaintiffs failed to establish genuine issues of material fact with respect to some of the elements of MCL 691.1417(3). We need not consider that argument on appeal in light of our conclusion that the trial court should have determined that the facts as alleged by plaintiffs failed to state a claim on which relief can be granted.

[3] Plaintiffs also allege that the drain commissioner made other, less substantial, mistakes in reviewing the drain-system project, apart from the TOA issue. Our determination that plaintiffs' allegations fail to state a claim on which relief can be granted applies equally to all the mistakes plaintiffs allege.

THE STATUTORY SCHEME

In pertinent part, the relatively recently enacted statute[4] plaintiffs rely on to bring this action provides:

(2) A governmental agency is immune from tort liability for the overflow or backup of a sewage disposal system unless the overflow or backup is a sewage disposal system event and the governmental agency is an appropriate governmental agency. Sections 16 to 19 abrogate common law exceptions, if any, to immunity for the overflow or backup of a sewage disposal system and provide the sole remedy for obtaining any form of relief for damages or physical injuries caused by a sewage disposal system event regardless of the legal theory.

(3) If a claimant, including a claimant seeking noneconomic damages, believes that an event caused property damage or physical injury, the claimant may seek compensation for the property damage or physical injury from a governmental agency if the claimant shows that all of the following existed at the time of the event:

(a) The governmental agency was an appropriate governmental agency.

(b) The sewage disposal system had a defect.

(c) The governmental agency knew, or in the exercise of reasonable diligence should have known, about the defect.

(d) The governmental agency, having the legal authority to do so, failed to take reasonable steps in a reasonable amount of time to repair, correct, or remedy the defect.

(e) The defect was a substantial proximate cause of the event and the property damage or physical injury. [MCL 691.1417.]

---

[4] MCL 691.1417 was enacted effective January 2, 2002, and has generated scant caselaw analysis, none of which is very helpful on the issues presented, as discussed below. Plaintiffs do not argue that any other statutory exception to governmental immunity applies to this case.

To successfully bring an action, a plaintiff cannot merely satisfy subsection 2 but must, instead, establish all the requirements of subsection 3. *Willett v Waterford Charter Twp*, 271 Mich App 38, 49-50; 718 NW2d 386 (2006).

The statute defines a "defect" to mean "a construction, design, maintenance, operation, or repair defect." MCL 691.1416(e). It defines "appropriate governmental agency" to mean a governmental agency that, at the time of a sewage-disposal-system event, owned or operated the portion of the system that allegedly caused damage. MCL 691.1416(b).[5] It defines "sewage disposal system event" or "event" to mean "the overflow or backup of a sewage disposal system onto real property." MCL 691.1416(k). It defines "sewage disposal system" to include "a storm water drain system" such as is at issue here. MCL 691.1416(j). Finally, it defines "substantial proximate cause" to mean "a proximate cause that was 50% or more of the cause of the event and the property damage or physical injury." MCL 691.1416(*l*).

In construing this statute, the " 'one basic principle that must guide our decision' " is that " 'the immunity conferred upon governmental agencies is *broad*, and the statutory exceptions thereto are to be *narrowly* construed.' " *Pohutski v City of Allen Park*, 465 Mich 675, 689; 641 NW2d 219 (2002), quoting *Nawrocki v Macomb Co Rd Comm*, 463 Mich 143, 158; 615 NW2d 702 (2000) (emphasis in original).

### CAN MCL 691.1417 ITSELF PROVIDE A CAUSE OF ACTION?

The drain commissioner relies on an extremely strained reading of MCL 691.1417 to contend that the

---

[5] Defendant drainage district does not contest that it is an "appropriate governmental agency" because it became the owner and operator of the subdivision drainage system, pursuant to an agreement between the drain commissioner and the developer under the Drain Code, MCL 280.433 ("a 433 agreement").

statute does not itself provide plaintiffs any cause of action but, instead, some independent cause of action must be pleaded (and plaintiffs failed to do so). Specifically he relies heavily on the last five words of subsection 2: "regardless of the legal theory." While the argument is difficult to comprehend or summarize, the contention is that the statute provides an exception to immunity if its requirements are satisfied, but only if there is some other legal theory upon which a claim for damages is based. In other words, defendant argues that the statute does not itself provide a cause of action.

A plain reading of subsection 2 itself does not support that conclusion and, when subsection 3 is also considered, that conclusion becomes even less tenable. Subsection 2 affirmatively and specifically states that the statute "provide[s] the sole remedy for obtaining any form of relief for damages or physical injuries caused by a sewage disposal system event . . . ." While perhaps not drafted as clearly as it could have been, subsection 2 can best be understood as stating that this statutory scheme replaces any other common-law exceptions to immunity that might otherwise exist for sewer overflow or backup actions, regardless of the legal theory giving rise to those common-law exceptions. In other words, this statute constitutes the only exception to governmental immunity legally recognized in Michigan with respect to these kinds of actions.

That the statute itself presents parties like plaintiffs here a potential cause of action is further evidenced by subsection 3. It clearly provides that a "claimant may seek compensation" if the listed requirements are satisfied. In sum, while some semantic challenges may exist, it is difficult to imagine a statutory scheme that more clearly provides a potential cause of action. See *Willett, supra* (applying MCL 691.1417 as providing a

potential cause of action). Plaintiffs can seek damages under the statute if they have stated valid claims with regard to its elements, the question to which we now turn.

### DO PLAINTIFFS STATE A VALID CLAIM UNDER MCL 691.1417(3)?

As noted earlier, defendant does not contest that plaintiffs have stated valid claims with regard to a number of the elements found within MCL 691.1417(3). There is no question that the May 2004 flooding constituted an "event" covered by the statute. Defendant admits that, having entered into a 433 agreement by which the drainage district became the owner and operator of the Creekside drainage system before May 2004, the drainage district is "an appropriate governmental agency" under subsection a. Defendant does not argue that the drainage system was not defective in its design, i.e., that it was not undersized, under subsection b.

Defendant contends, however, that subsection 3(d) of the statute cannot be satisfied because, under the facts as alleged by plaintiffs, defendant had no legal authority to repair the defect in the drainage system before the 2004 flooding of plaintiffs' homes.[6] Defendant relies on the scheme presented by the Drain Code. To fully comprehend defendant's argument in this regard requires a general understanding of the Drain Code, especially its provisions limiting how repairs of a drain system may be initiated and how the cost of repairs is to

---

[6] Defendant also contends that, under MCR 2.116(C)(10), plaintiffs failed to establish genuine issues of material fact regarding whether defendant had sufficient knowledge of the defect, MCL 691.1417(3)(c), and whether the defect was a substantial enough proximate cause of the flooding under MCL 691.1417(3)(e). As noted earlier, we need not reach the merits of those claims.

be allocated. Generally, the cost of any repair made to a drain system must necessarily be borne by persons who use the drain system. Thus, the statutory scheme can best be understood as balancing the potentially competing interests of drain-system users worried about defects in drain systems, drain commissioners who might want to overbuild or over-improve a drain system, and assessed taxpayers who may not want to incur costs associated with such improvements.

Specifically, MCL 280.191 requires that, if a drain system presents a problem, at least five property owners within the drainage district must petition the commissioner in writing for a repair. (Alternatively, a similar petition can be filed by a city, village, or township.) Once a petition has been filed, the statute provides that a three-member "board of determination" must review the petition, and it requires procedures designed to protect the due process rights of affected persons. MCL 280.191; MCL 280.72. The board makes a determination regarding the necessity of a repair, MCL 280.72(3), and aggrieved persons who dislike the determination may seek review in circuit court, MCL 280.72a. If the determination is in favor of making a repair, the drain commissioner may undertake the project, and project costs are apportioned to persons and entities who benefit from it. MCL 280.151.

Considering this statutory scheme, we conclude that defendant's claim that he was without "the legal authority to . . . repair, correct, or remedy the defect" at or before "the time of the event" has merit. Before the "event," the May 2004 flood, no petition had been filed and, of course, no decision by a board of determination directing defendant to "repair, correct, or remedy" the problem in the drain system had been made. In the absence of those prerequisite actions, defendant had no

authority to address the defect in the drain system. Although a petition for repair was ultimately filed by some of the plaintiffs and others, that occurred after, and as a result of, the flood; it certainly did nothing to empower defendant to take prior corrective action to prevent the flood.

In sum, the facts as alleged by plaintiffs do not establish that defendant drain commissioner had the legal authority to take any action to address the design defect that plaintiffs allege existed in the drain and contributed to the May 2004 flooding.[7] Thus, plaintiffs failed to state a valid claim that the requirement of MCL 691.1417(3)(d) was satisfied, and the trial court erred in failing to grant summary disposition to the drain commissioner and the drainage district.[8]

We reverse and remand for entry of an order granting the drain commissioner and the drainage district that relief. We do not retain jurisdiction.

---

[7] We note that the statute does not seem to "fit" the facts as alleged by plaintiffs for other reasons as well. For example, the statute imposes liability on a governmental agency only for a failure to "repair, correct, or remedy" a defect. MCL 691.1417(3)(d). The allegations here are that defendant failed in his responsibilities overseeing the design and installation of the drain system. We question whether the authority defendant had under the Drain Code to oversee that process also gives rise to a duty or obligation for which defendant could be held liable. But even assuming it does, the statute providing an exception to immunity does not make defendant liable for unreasonably failing to prevent the creation of a design defect; it only imposes an obligation to reasonably "repair, correct, or remedy" an existing defect. In any event, we need not, and do not, decide the merits of this or any other statutory argument defendant could have made but did not.

[8] In light of this determination, we need not consider the other arguments raised by defendant.