ARATH II, INC v HEUKELS COUNTY DRAIN DISTRICT

Docket No. 288725. Submitted April 15, 2010, at Grand Rapids. Decided April 29, 2010, at 9:15 a.m.

Arath II, Inc., and Arath IV, Inc. (collectively Arath), brought an action in the Kent Circuit Court against the Heukels County Drain District and the Kent County Drain Commissioner, alleging that the design of the drain district caused flooding on its property, which is located within the drain district. Arath sought an order for superintending control to compel the drain commissioner to perform certain construction activities and argued that defendants' failure to undertake the maintenance and improvements necessary to prevent excess storm water from being diverted onto and detained on Arath's property constituted a trespass. Defendants sought summary disposition on the basis that Arath failed to follow the procedure outlined in the Drain Code, MCL 280.1 *et seq.*, to petition for the repairs and improvements Arath sought. The trial court, George S. Buth, J., granted summary disposition in favor of the defendants. Arath appealed.

The Court of Appeals *held*:

Arath simply sought a court order ordering defendants to improve the Heukels Drain so that excess water no longer overflows onto Arath's property. The Drain Code provides that if Arath wants defendants to improve the drain it must first institute the filing of a petition with the drain commissioner. Only after a petition is filed and the commissioner makes a determination that the requested improvement or repair is needed may the commissioner then undertake the project. In the absence of such a determination, the drain commissioner has no authority to make any improvements to the drain. Arath failed to petition for such a determination and failed to establish that defendants had the authority to act pursuant to the Drain Code. Arath failed to state a claim on which relief could be granted. Summary disposition pursuant to MCR 2.116(C)(8) was appropriate. Because the drain commissioner has not received the authority to improve the drain in the manner sought by Arath, and remedy the trespass alleged by

Arath, it is premature to determine whether the alleged overflow of water onto Arath's property caused by defects in the drain constitutes a trespass.

Affirmed.

DRAINS — IMPROVEMENTS — REPAIRS — PETITIONS FOR IMPROVEMENTS OR REPAIRS.

The Drain Code provides that when a landowner whose property is in a drain district wants the drain to be improved or repaired, the landowner must first institute the filing of a petition with the drain commissioner; only after a petition is filed and a determination is made that the requested improvement or repair is needed may the drain commissioner undertake the project (MCL 280.1 *et seq.*).

*Rhoades McKee PC* (*Gregory G. Timmer*) for plaintiffs.

*The Hubbard Law Firm, P.C.* (by *Michael G. Woodworth* and *Mark T. Koerner*), for defendants.

Before: OWENS, P.J., and SAWYER and O'CONNELL, JJ.

O'CONNELL, J. Plaintiffs, Arath II, Inc., and Arath IV, Inc., appeal as of right the final order of the Kent Circuit Court granting summary disposition in favor of defendants, Heukels County Drain District (the drain district) and the Kent County Drain Commissioner, pursuant to MCR 2.116(C)(8) and (10). We affirm.

The drain district, located in Kent County, was established by a final order of determination on August 28, 1937.[1] When the drain district was established, a special assessment district was created that encompasses approximately 217.3 acres in Sections 22, 23, and 27 of Grand Rapids Township. The special assessment district is bounded on the north by Bradford Street, on the west by Leffingwell Street, on the south by Michigan Street, and on the east by East Beltline. Interstate

---

[1] The drain itself is known as the Heukels Drain.

96 cuts through the district, which is located immediately to the west of the East Beltline/I-96 interchange. The Kent County Drain Commissioner (drain commissioner) has jurisdiction over the district pursuant to the Drain Code, MCL 280.1 *et seq.*

Plaintiffs are related Michigan corporations.[2] Arath states in its complaint that it owns property located within the drain district. Apparently, this property is in an industrial park immediately south of I-96 and north of the Mid-Michigan Railroad tracks. There is a wetland subject to the regulatory authority of the Michigan Department of Environmental Quality (MDEQ)[3] located on part of Arath's property.

Arath filed its complaint in this case on June 6, 2008, alleging that the design of the drain district caused flooding on its property. According to Arath, the Heukels Drain diverted storm water exceeding natural flow volume and rate from the area north of I-96 through 48-inch-diameter culverts under both westbound and eastbound I-96 to Oak Industrial Court. When the water entered Oak Industrial Court, it apparently traveled south over a portion of Arath's property and through a 24-inch-diameter culvert under the Mid-Michigan Railroad tracks. From there, the water would continue to flow south to 2925 Michigan Street, a parcel of land owned by the city of Grand Rapids, and flow under Michigan Street, where an overflow structure had been installed.[4] In its complaint, Arath claimed that

---

[2] Apparently James Azzar is the president of both corporations. We will refer to both corporations, collectively, as "Arath."

[3] Pursuant to Executive Order 2009-45, on October 8, 2009, the MDEQ was eliminated and the Department of Natural Resources and Environment was created in its stead. MDEQ will be used in this opinion to refer to the relevant department.

[4] This runoff eventually flowed into Middleboro Lake, located south of Michigan Street.

the culvert under the Mid-Michigan Railroad tracks and the overflow structure at Michigan Street were inadequate, causing water to be retained on Arath's property.

In its complaint, Arath first sought an order for superintending control to compel the drain commissioner to construct a 48-inch-diameter culvert under the Mid-Michigan Railroad tracks and to remove the overflow structure under Michigan Street. Arath also argued that defendants' failure to undertake the maintenance and improvements necessary to prevent excess storm water from being diverted onto and detained on Arath's property constituted a trespass on Arath's property. In its request for relief, Arath asked that the trial court "enter an Order in Plaintiffs' favor enjoining Defendants from continuing their trespass, and further Order Defendants to complete the necessary maintenance, repair and improvements more specifically identified above."

Defendants moved for summary disposition pursuant to MCR 2.116(C)(8) and (10), claiming, in pertinent part, that Arath could not seek an order for superintending control to compel the drain commissioner to act. Instead, defendants argued, the Drain Code required Arath to petition the drain commissioner to act before the drain commissioner would have the authority to make repairs and improvements to the Heukels Drain. Defendants then provided information indicating that Arath had never pursued a petition under the Drain Code to obtain work on the Heukels Drain. Douglas Sporte, the deputy drain commissioner for Kent County, noted that in November 2004, he provided Arath's attorney with the form of the petition needed to initiate a drain project pursuant to the provisions of the Drain Code, as well as a form listing the procedures

needed to accomplish drain work in accordance with the code. However, Arath never filed a petition seeking to initiate a project on the Heukels Drain. Because no petition had ever been filed, the drain commissioner never convened a board of determination to consider whether a project on the Heukels Drain would be necessary.

In 2007, Arath's president, James Azzar, apparently attempted to install a 48-inch-diameter culvert near the Mid-Michigan Railroad tracks in order to address the flooding on Arath's property. The MDEQ issued a public notice regarding the project on June 26, 2007. When the drain commissioner's office received the notice, it informed Azzar that he was required to receive a permit from the drain commissioner's office in order to continue the project and the drain commissioner's office enclosed a permit application. However, on August 21, 2007, the MDEQ refused to approve the project and denied Azzar's request for a permit to install the 48-inch-diameter culvert. In explaining its decision, the MDEQ noted that "the proposed project will have a greater adverse impact to regulated resources than is required to achieve the project purpose." Azzar petitioned for reversal of the denial, but the record does not indicate whether this petition was successful.

The trial court granted defendants' motion for summary disposition pursuant to MCR 2.116(C)(8) and (10), finding that summary disposition was appropriate because Arath "did not follow the law and did not file a petition with the drain commission[er]."

On appeal, Arath claims that the trial court erred by dismissing its underlying cause of action in this case. According to Arath, it was not required to file a petition with the drain commissioner before commencing this cause of action because it did not seek the repair or

maintenance of an existing drain. Instead, Arath appears to argue that because there is no "public drain" on its property, it is somehow exempt from filing a petition and, instead, is entitled to seek injunctive relief requiring defendants to repair and maintain the drain in order to prevent an overflow of storm water onto its property.

However, in its complaint, Arath indicates that it is simply seeking an injunction to force defendants to make repairs and improvements to certain portions of the Heukels Drain that it believes are necessary to prevent the overflow of storm water onto its property.[5] In claiming that defendants are "trespassing" on Arath's property by "detaining" and "diverting" excess storm water in the drainage district onto its property, Arath appears to assert that the alleged "trespass" is simply the overflow of water onto its property, as opposed to a more overt act. Although Arath presents its cause of action as a plea to protect infringement of its property rights, the relief it seeks reveals the true nature of the case: Arath simply wants the trial court to order defendants to improve the Heukels Drain so that excess water no longer overflows onto Arath's property.

However, the Drain Code, MCL 280.1 *et seq.*, makes clear that when a landowner whose property is in a particular drain district wants the drain to be cleaned

---

[5] Notably, although Arath alleges that the Heukels Drain transverses its property, it does not argue that the drain should be moved or removed from its property. Instead, it wants the drain to be repaired and improved so that storm water does not collect on its property. Accordingly, it appears that the situation that Arath wants the trial court to address is not the transportation of water over its property, but the buildup of excess water on its property. Otherwise, Arath would have requested that the drain commissioner reroute the drain around its property, instead of simply requesting the court to require the drain commissioner to repair and improve the drain so that water flows over its property more efficiently.

or improved in some manner, that landowner, in conjunction with a certain number of other landowners whose lands would also be liable for assessment to pay for such work, should petition the drain commissioner to perform the requested work. MCL 280.191.[6] The drain commissioner can then undertake a review process, including the appointment of a three-member "board of determination" to review the proposal and providing an opportunity for a public hearing. MCL 280.191; MCL 280.72. Once the board makes a deter-

---

[6] MCL 280.191 states:

When a drain or portion thereof, which traverses lands wholly in 1 county, and lands only in 1 county which is subject to assessment, needs cleaning out, relocating, widening, deepening, straightening, tiling, extending, or relocating along a highway, or requires structures or mechanical devices that will properly purify or improve the flow of the drain or pumping equipment necessary to assist or relieve the flow of the drain, or needs supplementing by the construction of 1 or more relief drains which may consist of new drains or extensions, enlargements, or connections to existing drains, or needs 1 or more branches added thereto, any 5 or at least 50% of the freeholders if there are less than 5 freeholders whose lands shall be liable to an assessment for benefits of such work, may make petition in writing to the commissioner setting forth the necessity of the proposed work and the commissioner shall proceed in the same manner provided for the location, establishment, and construction of a drain. If the project includes a tiled relief drain, or the tiling of an existing open drain or any portion thereof, with a conduit a part of which has an inside diameter in excess of 36 inches or the retiling of an existing drain with a conduit, a part of which has an inside diameter in excess of 36 inches, then the petition shall comply with [MCL 280.71]. The preceding sentence shall not be applicable to the construction of bridges, culverts, and passageways. The word tiling as used in this and other sections of this act, means the laying of a conduit composed of tile, brick, concrete, or other material. . . . After the board of determination determines the necessity for the work, as provided in [MCL 280.72], the commissioner shall, as soon as practicable after the final order of determination prescribed in [MCL 280.151] has been filed by him, proceed as provided in [MCL 280.151 to 280.161]. If the apportionment is the same as the last recorded apportionments, no day of review is necessary, but in other cases the commissioner shall proceed as provided in sections 151 to 161, including the notice of and the holding of a day of review.

mination regarding the necessity of the proposed improvement or repair, MCL 280.72(3), "any person feeling aggrieved by the determination may institute an action in the circuit court for the county in which the real property is located for a determination of necessity," MCL 280.72a. If a determination is made that a repair or improvement is needed, the drain commissioner may then undertake the project, apportioning project costs among those benefiting from it. MCL 280.151; MCL 280.191. See also *Bosanic v Motz Dev, Inc*, 277 Mich App 277, 284-286; 745 NW2d 513 (2007).

Arath does not dispute that its property is located in the drain district. Further, in its complaint, it notes that "[t]he Drain Commissioner is legally obligated to inspect, maintain, repair and improve the Heukels Drain pursuant to the Drain Code" and specifically requests that defendants "comply with its [sic, their] obligations under the Drain Code . . . ." However, the Drain Code provides that if Arath wants defendants to improve the drain, it must first institute the filing of a petition with the drain commissioner. Only after a petition is filed and a determination is made that the requested improvement or repair is needed may the drain commissioner then undertake the project. Arath has not participated in filing a petition to request improvements to the Heukels Drain, nor has it established that such a petition has been filed or that a determination has otherwise been made that would permit the drain commissioner to make the improvements to the Heukels Drain that Arath desires. In the absence of such a determination, the drain commissioner has no authority to make any improvements to the Heukels Drain. Accordingly, although Arath claims that defendants breached their duty to maintain, repair, and improve the drain in the manner set forth in the Drain Code, it has failed to establish that defendants even had the

authority to act pursuant to the Drain Code. Arath failed to state a claim on which relief could be granted, and summary disposition was appropriate pursuant to MCR 2.116(C)(8).[7]

In *Bosanic*, the plaintiffs sought recovery from the county drain commissioner for damages arising from the flooding of their homes. *Bosanic*, 277 Mich App at 278. In particular, the plaintiffs claimed that the drain commissioner was, in part, responsible for the undersized drain system in their subdivision that, they claimed, caused the flooding. *Id.* The *Bosanic* Court concluded that recovery was precluded under MCL 691.1417 because before the flooding occurred, no petition had been filed or determination made directing the drain commissioner to " 'repair, correct, or remedy' " any problem in the drain system. *Bosanic*, 277 Mich App at 285. "In the absence of those prerequisite actions, defendant had no authority to address the defect in the drain system." *Id.* at 285-286.

Admittedly, the *Bosanic* Court addressed whether the plaintiffs could seek damages from the drain commissioner under an exception to governmental immunity set forth in MCL 691.1417. However, the rationale set forth by the *Bosanic* Court's decision is also applicable to this case: The Drain Code limits the authority of a drain commissioner to remedy defects to a drain by requiring outside actors to undertake prerequisite actions before providing the drain commissioner with authority to act.

In its complaint, Arath also requested that the trial court determine whether the detention and diversion of excess storm water on its property constitutes a tres-

---

[7] Because summary disposition was appropriate pursuant to MCR 2.116(C)(8), we need not consider whether summary disposition was appropriate pursuant to MCR 2.116(C)(10).

pass. Yet again, it appears that the "trespass" to which Arath refers is the overflow of excess water onto Arath's property caused by poorly designed culverts in the Heukels Drain.[8] Further, Arath seems to indicate that if the drain were repaired and improved, the alleged trespass would cease. Accordingly, it appears that because the drain commissioner has not yet even received the authority to repair and improve the Heukels Drain in the manner sought by Arath (and, hence, remedy the trespass alleged by Arath), a determination whether the alleged overflow of water onto Arath's property caused by defects in the Heukels Drain constitutes a trespass would be premature.

In addition, MCL 280.195 permits the drain commissioner to obtain any right-of-way from Arath that it might need in order to undertake a project to maintain or improve the Heukels Drain. Therefore, if the drain commissioner were to receive the authority to improve and repair the Heukels Drain in the manner sought by Arath, it would have the authority to obtain any necessary right-of-way in the manner set forth in the Drain Code.

Affirmed.

---

[8] When setting forth its allegation of trespass in its complaint, Arath described the nature of the trespass in question as the "detaining" and "diverting" of excess storm water onto its property, indicating that it was not challenging the normal flow of water within the Heukels Drain, but instead was claiming that a trespass occurred when water overflowed the drain and settled on Arath's property.